UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KIMBERLY SALERNO,

                                        Plaintiff,

        v.                                                              Civil Action No. 1:15-cv-00516-JTC

CREDIT ONE BANK, NA

                                        Defendant.
_____

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY**

**I.  Preliminary Statement**

On June 11, 2015 Plaintiff filed this civil action.  (Dkt #1).  On June 30, 2015, Plaintiff filed its First Amended Complaint.  (Dkt #2).  Plaintiff served its First Amended Complaint on Defendant Credit One Bank, NA on July 7, 2015.  (Dkt #5).  On August 4, 2015 a 26(f) conference was held pursuant to Federal Rule of Civil Procedure 26(f) in this matter.  (*See* Affirmation of Timothy Hiller).  Plaintiff has since served discovery requests on Defendant Credit One Bank, NA.  (*Id.*).  On August 12, 2015 Defendant filed a Motion to Compel Arbitration and to Stay.  (Dkt #9).

As part of its motion,  Defendant has attached a card agreement (hereinafter "purported card agreement") to its Motion to Compel Arbitration.  (Dkt #9-3).  Based on a conclusory hearsay allegation contained in a self-serving affidavit, Defendant alleges that this purported card holder agreement was sent to Plaintiff between May 9, 2012 and May 21, 2012.  (Dkt #9-2, ¶¶7-9).  With only a paragraph of legal "analysis"[1] Defendant's memorandum argues that its affidavit

_____

[1] In the paragraph of text which Defendant devotes to this lynchpin issue, Defendant simply repeats the information which was contained in the affidavit attached to its motion.  (Dkt #9-2, p. 6).  Amazingly, Defendant fails to cite to any legal authority.  (*Id.*).

1

demonstrates that a "valid arbitration agreement exists between Credit One and Plaintiff." (Dkt #9-1, p. 6). As laid out below, Plaintiff challenges the assertion that she entered into the purported arbitration agreement, and asks that this court determine as a matter of law that Defendant has failed to put forward any competent evidence otherwise. In the alternative, Plaintiff submits that there is at least a "genuine issue of fact" related to whether she agreed to the purported arbitration agreement and requests a trial by jury on that issue pursuant to 9 U.S.C. §4.

Moreover, assuming *arguendo* that Plaintiff did enter into a valid arbitration agreement with Defendant, it is not clear whether Credit One exercised its ability to amend the contract terms in between May 21, 2012 and the time Plaintiff began receiving robo-calls in violation of the TCPA in (or around) the spring of 2015. (*See* Dkt #3) (Plaintiff's Amended Complaint). Additionally, at least one (and perhaps many more) of the calls complained of in Plaintiff's complaint are clearly outside the scope of the purported arbitration agreement. (*See* Affidavit of Kimberly Salerno) As such, in the event that this court determines that Plaintiff did enter into the purported arbitration agreement, Plaintiff respectfully requests that this court defer ruling on Defendant's motion to compel arbitration and to stay until such time as Plaintiff has had an opportunity to discover these relevant facts. If any issues of material fact remain after discovery, a trial pursuant to 9 U.S.C. §4 is required.

## II. <u>Law and Argument</u>

**A. Defendant's Motion to Compel Arbitration fails to establish sufficient facts demonstrating that Plaintiff and Credit One agreed to the purported card agreement annexed to Defendant's motion. As such, it is deficient as a matter of law. In the alternative, there is *at least* genuine issue of fact regarding whether Plaintiff and Defendant agreed to arbitrate. In the event that Plaintiff cannot persuade this court to deny Defendant's motion as a matter of law, a trial by jury is required pursuant to 9 U.S.C. §4.**

The threshold question facing any court considering a motion to compel arbitration is whether the parties have indeed agreed to arbitrate. Inasmuch as the arbitrator has no authority of any kind with respect to a matter at issue absent an agreement to arbitrate, the question of whether such an agreement exists and is effective is necessarily for the court and not the arbitrator. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (*citing AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648–49, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Specht,* 306 F.3d at 26–27. Under the FAA, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. But a trial is warranted only if there exists one or more genuine issues of material fact regarding whether the parties have entered into such an agreement. *See Schnabel*, 697 F.3d at 118 (citing *Opals on Ice Lingerie v. Bodylines Inc.,* 320 F.3d 362, 369 (2d Cir.2003)).

    i.   *The laws of the State of New York apply.*

Whether or not the parties have agreed to arbitrate is a question of state contract law. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) (*citing Specht*, 306 F.3d at 26; *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 295–96 (2d Cir.1999) ("[W]hile ... the FAA preempts state law that treats arbitration agreements differently from any other contracts, it also preserves general principles of state contract law as rules of decision on whether the parties have entered into an agreement to arbitrate.") (internal quotation marks and footnote omitted)). Thus, a preliminary issue is which state's laws should apply. The terms and conditions at issue here include a choice-of-law provision, which—like the arbitration clause—was buried in the fine print and not prominently displayed on the front page. (Dkt #9-2, p. 4) (stating that Nevada Law governs the agreement). However, the Second Circuit

has stated that choice of law provisions cannot control as to the initial determination as to whether the parties have agreed to be bound by the terms in which the choice of law provision is contained. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d. Cir. 2012) ("Applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established. *See, e.g., Trans–Tec Asia v. M/V Harmony Container,* 518 F.3d 1120, 1124 (9th Cir.2008) ("[W]e cannot rely on the choice of law provision until we have decided, as a matter of law, that such a provision was a valid contractual term and was legitimately incorporated into the parties' contract."); *B–S Steel of Kansas, Inc. v. Texas Indus., Inc.,* 439 F.3d 653, 661 n. 9 (10th Cir.2006) (referring to "the logical flaw inherent in applying a contractual choice of law provision before determining whether the underlying contract is valid"). As such, the choice of law provision itself is clearly not instructive.

Plaintiff resides in the state of New York. Defendant is a Nevada Banking Corporation. (*See* Dkt #3, "Parties", ¶1-2). Thus, either the laws of Nevada or New York must apply. *See Schnabel*, 697 F.3d at 119 (after determining that the choice of law provision did not apply, the court noted that either the laws of the Defendant's home state, or the laws of Plaintiff's home state applied).

Fortunately, both Nevada and New York follow the Second Restatement's "center of gravity" or "significant relationship" test when it comes to choice of law questions concerning contracts. *See Progressive Gulf Ins. Co. v. Faehnrich*, 327 P.3d 1061, 1063 (Nev.,2014) ("Nevada tends to follow the Restatement (Second) of Conflict of Laws (1971) in determining choice-of-law questions involving contracts, generally"); *Fieger v. Pitney Bowes Credit Corp,* 251 F.ed 386, 395 (2d Cir. 2001) ("New York employs two different choice-of-law analyses, one

for contract claims, another for tort claims…Under the contracts analysis, the court evaluates the "center of gravity" or "grouping of contacts", with the purpose of establishing which state has "the most significant relationship to the transaction and the parties." (citing *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc*., 84 N.Y.2d 309, 618 N.Y.S.2d 609, 612, 642 N.E.2d 1065 (1994) (quoting Restatement (Second) of Conflict of Laws § 188[1] )).  Along with "the traditionally determinative choice of law factor of the place of contracting," the New York Court of Appeals has endorsed the following factors (identified in the Restatement which, as previously mentioned Nevada also follows): "the places of negotiation and performance; the location of the subject matter; and the  *152 domicile or place of business of the contracting parties." *Schwartz v. Liberty Mut. Ins. Co*., 539 F.3d 135, 151-52 (2d Cir. 2008) (Zurich, 84 N.Y.2d at 317, 618 N.Y.S.2d 609, 642 N.E.2d 1065).

Here, the place of alleged contracting was New York.  None of the other factors demonstrate that Nevada has a sufficient interest to outweigh that "traditionally determinative choice of law factor."  Performance on the agreement took place in New York, and in California, and not in Nevada.  (*See* Dkt #9-5) (billing statements were mailed to Plaintiff in New York, and bills were payable to a P.O. Box in California).  The negotiation and execution of the alleged contract all took place in New York when, according to Defendant, Plaintiff allegedly received the agreement (in New York), and executed on the agreement (by using the Credit card, presumably in New York).  While Defendant is domiciled in Nevada, this factor ends up being a net neutral in light of the fact that Plaintiff is domiciled in New York.  As such, it is clear that the laws of the state of New York apply.

   *ii.  Pursuant to New York law, Defendant's motion should be denied as a matter of law.*

Defendant has submitted an affidavit from an individual who claims to be familiar with the manner in which Credit One maintains its records, in the normal course of business.  (Dkt #9-2, ¶5-6).  This individual further claims to have reviewed the documents related to Ms. Salerno's account.  (*Id*. at 6).  He claims that Ms. Salerno was sent a copy of a cardholder agreement.  (Dkt #9-2, ¶8-9) (referring to Dkt #9-4).  It is not clear from the affidavit how the affiant knows this. It is also not clear when the affiant is claiming that the cardholder agreement was mailed to Ms. Salerno (although presumable the affiant is claiming that the agreement was sent at some point between May 9, 2012 when Plaintiff allegedly filled out her application, and May 21, 2012 when Plaintiff allegedly activated her card).  In its motion to compel arbitration, Defendant simply repeats the statements made in this affidavit and concludes (without any additional analysis) that it is sufficient to prove that Plaintiff and Defendant entered into the arbitration agreement contained in (Dkt 9-4).   (*See* Dkt #9-1, p. 6).

Presumably, Defendant is relying on the so-called "mailbox rule" which holds that evidence of proper mailing gives rise to a rebuttable presumption of receipt.  *See e.g. Azriliant v. Eagle Chase Associates*, 624 N.Y.S.2d 238, 240, 213 A.D.2d 573, 575 (N.Y.A.D. 2 Dept.,1995) ("…a rebuttable presumption of receipt based on proof of regular mailing may be available in cases where regular mailing is itself sufficient to comply with the requirements of the law, or with the requirements of the parties' contract.").[2]  However, Defendant has not put forward sufficient evidence of mailing under New York State Law to be entitled to this presumption. *See*

---

[2] Under New York Law, a consumer's acceptance of credit card terms can be established by use of a card, after the consumer has been given notice of the terms.  *See e.g. MBNA America Bank, N.A. v. Nelson*, 2007 WL 1704618, at *7 (N.Y.City Civ.Ct.,2007) (*citing Martin*, 11 Misc.3d 219, 807 N.Y.S.2d 284, *supra* at 223) ("copies of credit card statements ... serve to evidence a buyer's subsequent use of the credit card and acceptance of the original or revised terms of credit").  However, the burden is on the credit card company to show that it tendered the actual purported provisions to the consumer prior to the consumer's use of the credit card.

*James E. Cashman, Inc. v. Spellman*, 233 A.D. 5, 251 N.Y.S. 240, 244 (N.Y.A.D. 3 1931) ("If plaintiff desired to avail itself of the inference that defendants received the letter, which would arise from proper mailing, it was incumbent upon plaintiff to establish that it was mailed.*");* *Capital One Bank USA NA v. Joseph*, 2013 WL 5663260, at \*2 (N.Y.Dist.Ct.,2013) ("In the absence of competent proof of mailing of the account statements to defendant, plaintiff's moving papers are insufficient, as a matter of law.

The presumption may be created by either proof of actual mailing or proof of a standard office practice or procedure designed to ensure that items are properly addressed and mailed. *Residential Holding Corp. v. Scottsdale Ins. Co.*, 729 N.Y.S.2d 776, 778, 286 A.D.2d 679, 680 (N.Y.A.D. 2 Dept.,2001) (*citing Tracy v. William Penn Life Ins. Co. of N.Y.*, 234 A.D.2d 745, 650 N.Y.S.2d 907; *Pardo v. Central Coop. Ins. Co*., 223 A.D.2d 832, 636 N.Y.S.2d 184); *see also Azriliant v. Eagle Chase Associates*, 624 N.Y.S.2d 238, 240, 213 A.D.2d 573, 575 (N.Y.A.D. 2 Dept.,1995). Sufficient proof of mailing generally requires "proof of mailing in an enveloped properly addressed and stamped." *See e.g., Silver v. Frieden*, 2006 WL 1909956, at \*2 (N.Y.Sup.,2006) (citing *Uni-Serv Corp. v. Frede*, 271 N.Y.S.2d 478, 481, 50 Misc.2d 823, 825 (N.Y.City Civ.Ct. 1966) (citing *Herman v. Associated Hospital Service of New York*, 45 Misc.2d 178, 256 N.Y.S.2d 373, *reversed on grounds unrelated to the mailbox rule in* 275, N.Y.S.2d 361)). To establish proof of mailing by way of office policy, an affidavit should detail standard office policies and procedures regarding the processing of claims and it must also contain a statement of the affiant's personal knowledge that those policies and procedures have been followed in the instant case. *See, e.g., Presutto v. Travelers Ins. Co*., 2007 WL 3146580, at \*2 (N.Y.City Civ.Ct.,2007).

Here, Defendant's affidavit is insufficient to entitle it to the presumption of mailing, especially in light of Plaintiff's denial of receipt.  (*See* Affidavit of Kimberly Salerno).  The affiant does not provide any proof of mailing (even though other records are readily attached to the affidavit), nor does the affiant give any indication as to what his basis was for concluding that Plaintiff had been mailed a copy of the card agreement along with her credit card.  (Dkt #9-2, ¶8-9).  No office policy or procedure is identified by the affiant with regards to mailing.  (*Id*.).  Moreover, it is clear from the face of the affidavit that the affiant did not have personal knowledge that the card agreement was mailed to Plaintiff.  (*Id*.).  Indeed, it is not even clear what date Defendant is claiming that Plaintiff was mailed a copy of the purported card agreement. (*Id*.).  As such, Defendant's motion to compel arbitration must be denied as a matter of law.

  iii. *Assuming the court is persuaded that there is some genuine issue of material fact related to whether the notice was actually mailed to Plaintiff, a jury trial is required pursuant to 9 U.S.C. §4.*

On a motion to compel arbitration, "the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir.2003). Thus, "[i]f undisputed facts in the record require[ ] the issue of arbitrability to be resolved against a party as a matter of law," then a district court must either compel arbitration, or deny the motion for arbitration as a matter of law. *Id*. On the other hand, "[i]f there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id*. (citing 9 U.S .C. § 4). Such "a trial is warranted only if there exists one or more genuine issues of material fact regarding whether the parties have entered into such an agreement." *Schnabel v. Trilegiant*, Corp., 697 F.3d 110, 118 (2d Cir.2012) (*citing Opals on Ice Lingerie v. Bodylines Inc*., 320 F.3d 362, 369 (2d Cir.2002)).  Plaintiff notes that 9 U.S.C. §4 specifically contemplates that this trial

will be by jury unless a trial by jury is not demanded.  *Id.* ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue.").

As explained above, in light of Plaintiff's annexed affidavit denying receipt of the purported card agreement, and in light of the deficiencies noted with regards to Defendant's affidavit of mailing, it is asserted that Defendant's motion for to compel arbitration should be denied as a matter of law. However, at minimum, Plaintiff submits that there is a genuine issue of fact related to whether the card agreement attached to Defendant's motion to compel was ever mailed to Plaintiff.  Pursuant to 9 U.S.C. §4, Plaintiff demands a trial by jury as to that issue, should this court remain unconvinced that the deficiencies with Defendant's affidavit outlined above do not warrant denying Defendant's motion to compel as a matter of law.

**B.  Assuming *arguendo* that this court concludes that Ms. Salerno agreed to the purported May 21, 2012 card agreement attached to Defendant's motion to compel arbitration, and that the agreement was enforceable, further discovery is required into (1) whether Credit One subsequently elected its unilateral privilege to amend the terms of the purported May 21, 2012 cardholder agreement; and assuming that Credit One did not amend the terms, (2) *which calls* Ms. Salerno and Credit One allegedly agreed to arbitrate under that agreement.**

Even if this court were inclined to find that the purported cardholder agreement between Ms. Salerno and Credit One reflected a valid and enforceable contract as of May 21, 2012, when Ms. Salerno allegedly activated her card, further discovery is needed.  Plaintiff  first notes that the purported card agreement (1) predates the actions forming the basis of Ms. Salerno's complaint by three years; (2) allowed Credit One to unilaterally amend the terms of the cardholder agreement; and (3) it is not clear whether Credit One did so.  Additionally, in

Plaintiff's complaint (Dkt #3, ¶20), and in the affidavit annexed to this motion (Affidavit of Kimberly Salerno, ¶5-9), Plaintiff has laid out facts demonstrating that at least one of the calls forming the basis of her complaint were not related to her account with Credit One Bank, NA, to any prior account she had with Credit One Bank, NA, or to any relationship resulting from any current or prior account with Credit One Bank, NA.  Thus, at issue is (1) whether the purported agreement was subsequently amended; (2) whether the purported arbitration agreement (even if currently valid and enforceable) covers disputes between Credit One Bank, NA and Ms. Salerno wholly unrelated to her relationship with Credit One Bank, NA; and (3) assuming there are issues of fact remaining with regards to the previous two issues, whether Credit One Bank, NA's motion to compel arbitration should be stayed pending further discovery into whether some or all of the calls forming the basis of Ms. Salerno's complaint were made in reference to her boyfriend's account.

     i.   *Even if the purported agreement at one point reflected an agreement between Ms. Salerno and Credit One, it is not clear whether the purported agreement was ever amended by Credit One.*

As noted above, the purported cardholder agreement indicated that it could be modified upon any time upon notice to Plaintiff.  (*See* Dkt #9-4) ("We can change any term of this agreement, including the rate of the finance charge or the manner in which the finance charges are calculated, or add new terms to this Agreement, at any time upon such notice to you as is required by law.").  Yet, the affidavit offered in support of Credit One's motion to compel arbitration does not indicate whether Credit One exercised that option.  (Dkt #9-2).   Given that the purported cardholder agreement predates Defendant's illegal conduct by almost three years, *Compare* (Dkt# 9-2) (claiming cardholder agreement became effective as of May 21, 2012); *with* (Dkt#3) (complaining of conduct beginning in the spring of 2015), it is far from clear whether

this purported agreement reflected the current agreement between Ms. Salerno and Credit One at the time Defendant began robo-dialing Plaintiff in violation of the TCPA.   There is clearly an issue of fact remaining as to whether the purported agreement, even if valid and enforceable as of May 21, 2012, reflected the parties *current agreement* as of the date Credit One began robo-dialing Ms. Salerno.

    ii.  *A plain reading of the purported arbitration agreement reveals that only intended to cover disputes related to: (1) Ms. Salerno's account; (2) a prior account that Ms. Salerno had with Credit One; (3) a relationship which resulted as a result of Ms. Salerno's account, or a prior account.*

As noted above, Defendant alleges in conclusory fashion that it sent the purported card agreement to Ms. Salerno at some point in between May 9, 2012 and May 21, 2012.  (Dkt 9-2, ¶¶7-9) Buried on the 5th and 6th pages of the purported card agreement arbitration agreement, which begins as follows:

**PLEASE READ THIS PROVISION OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT. IN ARBITRATION, YOU MAY CHOOSE TO HAVE A HEARING AND BE REPRESENTED BY COUNSEL.**

**Agreement to Arbitrate:**

You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (**all of which are called "Claims"**), be submitted to mandatory, binding arbitration. This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the

"FAA"), 9 U.S.C. §1 et seq., and (to the extent State law is applicable), the State law governing this Agreement.

(Dkt 9-2, p. 5) (emphasis added).  Plaintiff submits that a plain reading of the purported agreement indicates that the "Claims" covered by the arbitration agreement contained therein are limited to disputes related to (1) Ms. Salerno's account; (2) a prior account that Ms. Salerno had with Credit One; (3) a relationship which resulted as a result of Ms. Salerno's account, or a prior account:

> **Claims Covered:**
>
> • Claims subject to arbitration include, but are not limited to, disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination **of your account**; any disclosures or other documents or communications **relating to your account**; any transactions or attempted transactions **involving your account**, whether authorized or not; billing, billing errors, credit reporting, the posting of transactions, payment or credits, or collections matters **relating to your account**; services or benefits programs **relating to your account**, whether or not they are offered, introduced, sold or provided by us; advertisements, promotions, or oral or written statements **related to (or preceding the opening of) your account**, goods or services financed **under your account**, or the terms of financing; the application, enforceability or interpretation of this Agreement, including this arbitration provision; and any other matters **relating to your account**, **a prior related account or the resulting relationships between you and us**. Any questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.

(Dkt 9-2, p. 5-6) (emphasis added).  Save for the last clause, each instance of a "Claim" refers specifically to "your account."  Obviously, to the extent that Ms. Salerno is complaining that Credit One Bank, NA was calling her cellular phone without consent in an attempt to collect on her boyfriend's account (or obtain information regarding that account), that was not related to her account, and thus not covered by the plain language of the arbitration agreement.  Regarding the last clause, it covers any issues related to a prior account, or issues regarding the relationship between Ms. Salerno and Credit One Bank, NA which resulted from her current or prior account.

To the extent that Ms. Salerno can show that calls were placed to her cellular phone regarding her boyfriend's account, this clause simply does not speak to a dispute concerning those calls.  In sum, Plaintiff and Credit One Bank, NA did not agree to arbitrate claims wholly unrelated to Ms. Salerno's relationship with Credit One Bank, NA.   In light of Plaintiff's affidavit, there is clearly a genuine issue of material fact as to how many of the calls placed to her cellular phone (as described in her complaint) were in reference to her boyfriend's account.  (*See* Affidavit of Kimberly Salerno).

   iii. *Defendant Credit One Bank, NA's motion to compel arbitration should be held in abeyance pending further discovery into the issues noted above.*

   "In the context of motions to compel arbitration brought under the Federal Arbitration Act ('FAA'), 9 U.S.C. § 4 (2000), the court applies a standard similar to that applicable for a motion for summary judgment." *Hudson v. Babilonia*, 2015 WL 1780879, at *1 (D.Conn.,2015) (citing *Bensadoun v. Jobe–Riat,* 316 F.3d 171, 175 (2d Cir.2003)).  "In a typical motion to compel arbitration ... some discovery may be allowable or necessary." *Id*. (citing *Moss v. BMO Harris Bank, N.A.,* No. 13–CV–05438 (JFB)(GRB), 2014 WL 2565824 (E.D.N.Y. June 9, 2014) (quoting *Lismore v. Societe Generale Energy Corp.,* No. 11–CV–06705 (AJN), 2012 WL 3577833, at *1 (S.D.N.Y. Aug. 17, 2012); *Alvarez v. T–Mobile USA, Inc.,* 822 F.Supp.2d 1081, 1085 (E.D.Cal.2011)).  Federal Rule of Civil Procedure 56(d), which governs when motions for summary judgments may be postponed for further discovery states that "If a nonmovant shows by affidavit or declaration that, for some specified reason, it cannot present facts essential to justif allows for postponement of a motion for summary judgment where a movant demonstrates: (1) a description of the particular discovery that movant intends to seek; (2) an explanation showing how that discovery would preclude the entry of summary judgment; and (3) a statement

13

justifying why this discovery had not been or could not have been obtained earlier.  *See Jones v. Secord*, 684 F.3d 1, 6 (1ˢᵗ Cir.2012); *Pa. Dep't of Public Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012); *Valley Forge Ins. Co. v. Health Care Management Partners, Ltd*., 616 F.3d 1086, 1096 (10ᵗʰ Cir. 2010); *see also Wolpoff v. Abramson*, 321 F.3d 292, 303 (2nd Cir. 2002) (*quoting Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc*., 271 F.3d 374, 386 (2d Cir.2001) (""[Rule 56(f) provides, as interpreted by court opinions, that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion… only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery…"[A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing '(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.").

Applying this standard to the present case, Plaintiff is easily able to satisfy this three pronged test.  First, Plaintiff describes the discovery necessary as follows:

> Discovery into (1) whether the purported agreement, even if valid and enforceable as of May 21, 2012 was subsequently amended pursuant to Credit One's unilateral ability to do so; and (2) assuming that it was not amended, how many of the calls forming the basis of her amended complaint were not in reference to (a) the account she opened with Credit One in 2012; (b) a past account she may have had with Credit One; or (c) the relationships resulting from any of the past or current accounts she had with credit one.

Second, Plaintiff has carefully demonstrated that to the extent she is able to confirm that (1) the purported card agreement was amended following May 21, 2012 and before the spring of 2015,

that it could not form the basis of an appropriate motion to arbitrate, and (2) to the extent that it is proven that one or more of the calls forming the basis of her complaint were in reference to her boyfriend's account (and thus not covered by her arbitration agreement) Defendant's motion to compel arbitration could not pertain to those calls.  Finally, given that Defendant Credit One Bank, NA filed its motion to compel arbitration roughly one week after the 26(f) conference was held in this matter, Plaintiff can hardly be faulted for failing to conduct discovery into these issues sooner.  Plaintiff notes that it diligently submitted discovery to Defendant on the same day of the 26(f) conference and is currently awaiting a response.  (*See* Affirmation of Timothy Hiller). Thus, all three prongs of the *Commercial Cleaning Services* test have been satisfied.

As such, Plaintiff respectfully requests that this court hold Defendant's motion to compel in abeyance until such time as Plaintiff has been afforded an opportunity to conduct the discovery described above.

### III. Conclusion

Based on the foregoing, Plaintiff respectfully requests that Defendant Credit One Bank, NA's motion to compel arbitration be denied as a matter of law.  In the alternative, this matter should be held in abeyance pending further discovery (as described above) and a trial by jury as to any remaining issues of fact.

Respectfully Submitted,

*/s/ Timothy Hiller*

_____

Timothy Hiller, Esq.
Law Offices of Kenneth Hiller, PLLC
*Attorneys for Plaintiff*
6000 North Bailey Avenue, Suite 1A
Amherst, New York 14226
(716) 564-3288
Email: thiller@kennethhiller.com