UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KIMBERLY SALERNO,

          Plaintiff,

      -vs-                15-CV-516-JTC

CREDIT ONE BANK, NA,

          Defendant.

---

In the amended complaint in this action (Item 3), plaintiff Kimberly Salerno claims that defendant Credit One Bank, N.A. ("Credit One"), violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by using an automated telephone dialing system to repeatedly call plaintiff's home and cellular telephones, without her prior express consent, regarding her Credit One credit card account. Credit One has moved for an order pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2-4, and in accordance with the arbitration clause in the underlying credit card agreement for the credit card account at issue, compelling arbitration of plaintiff's claims and staying proceedings in this court pending arbitration. *See* Item 9.

For the reasons that follow, defendant's motion is granted.

## **BACKGROUND**

Plaintiff opened her account with Credit One on or about May 9, 2012, by applying through Credit One's website. *See* Item 3, ¶ 7; *see also* Item 9-2 (Affidavit of Gary Harwood), ¶ 7; Item 9-3. According to credit card account records kept in the regular course of Credit One's business, plaintiff's online application was made in response to a

written solicitation mailed on or about April 27, 2012, bearing a unique reservation number. *See* Item 17-1 (Affidavit of Vicki Scott), ¶¶ 7, 9.  Upon approval of the online application, Credit One mailed a credit card to plaintiff at the address provided.  *Id.* at ¶ 10.  In accordance with company policy, enclosed within the same envelope was a copy of the "Visa/Mastercard Cardholder Agreement, Disclosure Statement and Arbitration Agreement" (the "Cardholder Agreement") governing the account.  *Id.* at ¶¶ 10-11.  The arbitration clause of the Cardholder Agreement provides as follows:

### ARBITRATION

**PLEASE READ THIS PROVISION OF YOUR CARD AGREEMENT CAREFULLY.  IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION.  ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.  IN ARBITRATION, A DISPUTE IS RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY.  ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.  IN ARBITRATION, YOU MAY CHOOSE TO HAVE A HEARING AND BE REPRESENTED BY COUNSEL.**

*Agreement to Arbitrate:*
You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration.  This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 et seq., and (to the extent State law is applicable), the State law governing this Agreement.
*Claims Covered:*
• Claims subject to arbitration include, but are not limited to, disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination of your account; any disclosures or other documents or communications relating to your account; any transactions or attempted transactions involving your account, whether authorized or not; billing, billing errors, credit reporting, the posting of transactions, payment or credits, or collections matters relating to your account; services or benefits

programs relating to your account, whether or not they are offered, introduced, sold or provided by us; advertisements, promotions, or oral or written statements related to (or preceding the opening of) your account, goods or services financed under your account, or the terms of financing; the application, enforceability or interpretation of this Agreement, including this arbitration provision; and any other matters relating to your account, a prior related account or the resulting relationships between you and us.  Any questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.

- Claims subject to arbitration include not only Claims made directly by you, but also Claims made by anyone connected with you or claiming through you, such as a co-applicant or authorized user of your account, your agent, representative or heirs, or a trustee in bankruptcy.  Similarly, Claims subject to arbitration include not only Claims that relate directly to us, a parent company, affiliated company, and any predecessors and successors (and the employees, officers and directors of all of these entities), but also Claims for which we may be directly or indirectly liable, even if we are not properly named at the time the Claim is made.
- Claims subject to arbitration include Claims based on any theory of law, any contract, statute, regulation, ordinance, tort (including fraud or any intentional tort), common law, constitutional provision, respondeat superior, agency or other doctrine concerning liability for other persons, custom or course of dealing or any other legal or equitable ground (including any claim for injunctive or declaratory relief).  Claims subject to arbitration include Claims based on any allegations of fact, including an alleged act, inaction, omission, suppression, representation, statement, obligation, duty, right, condition, status or relationship.
- Claims subject to arbitration include Claims that arose in the past, or arise in the present or future. Claims are subject to arbitration whether they are made independently or with other claims in proceedings involving you, us or others.  Claims subject to arbitration include Claims that are made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any Claim(s) advanced in the lawsuit by any other party or parties. Claims subject to arbitration include Claims made as part of a class action or other representative action, and the arbitration of such Claims must proceed on an individual basis.
- If you or we require arbitration of a particular Claim, neither you, we, nor any other person may pursue the Claim in any litigation, whether as a class action, private attorney general action, other representative action or otherwise. …

Item 9-4, pp. 5-6.

Upon receiving the card, plaintiff activated the account through Credit One's interactive voice response system, and on May 21, 2012, plaintiff began making charges on the account. Item 17-1, ¶¶ 12-13; *see also id.* at pp. 15-16. Account records reflect that plaintiff has made regular use of the Credit One account (*see id.* at 15-56), and as alleged in the amended complaint, "[f]rom time to time, [p]laintiff has been unable to make payments on the amount owed pursuant to her line of credit." Item 3, ¶ 8. She alleges that, "[i]n those instances, Credit One has responded by freezing her line of credit, and harassing her with automated calls ('robo calls') to her home phone" and cellular phone, without her express consent, in violation of the TCPA. *Id.* at ¶¶ 9, 16-30.

Credit One moves pursuant to the FAA to compel arbitration of plaintiff's TCPA claims in accordance with the arbitration clause of the Cardholder Agreement, and also seeks an order staying these proceedings pending the outcome of arbitration. Plaintiff contends that she did not agree to arbitrate her claims against Credit One because she does not recall ever receiving a copy of the Cardholder Agreement, and she did not otherwise consent to be bound by the terms of the arbitration clause. *See* Item 16-2.

## DISCUSSION

**The Federal Arbitration Act.**

The FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA provides that an arbitration provision in "a contract evidencing a transaction involving commerce … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract." 9 U.S.C. § 2.  Further, the FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution" and "supplies not simply a procedural framework applicable in federal courts" but "also calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration."  *Preston v. Ferrer*, 552 U.S. 346, 349 (2008).

The primary purpose of the FAA "is to ensure that private agreements to arbitrate are enforced according to their terms."  *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 127 (2d Cir. 2011) (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479 (1989).  The Supreme Court has recognized that, despite the "liberal federal policy favoring arbitration agreements," *Moses H. Cone*, 460 U.S. at 24, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960), *quoted in*  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).  However, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone*, 460 U.S. at 24–25. Accordingly, federal policy requires courts "to construe arbitration clauses as broadly as possible …," *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 128; *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995), and the agreement to arbitrate should be enforced "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

In the Second Circuit, courts employ the following four-part inquiry to determine whether to order the parties in litigation to arbitrate the claims asserted in the action, and to stay court proceedings pending arbitration:

> [F]irst, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987) (internal citations omitted); *see also Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998); *Fedotov v. Peter T. Roach & Associates, P.C.*, 2006 WL 692002, at *1 (S.D.N.Y. Mar. 16, 2006).

### 1. Agreement to Arbitrate

"Because an agreement to arbitrate is a creature of contract, … the ultimate question of whether the parties agreed to arbitrate is determined by state law." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The parties in this case agree that New York law governs determination of this issue.

As indicated, the primary basis for plaintiff's opposition to arbitration is her contention that she is not bound by the terms of the Cardholder Agreement because she does not recall ever receiving it. This contention is rejected outright. For one thing, it is clear under New York law that regular use of a credit card constitutes sufficient evidence of the card user's consent to the terms of the agreement governing the account. *See*

*Johnson v. Chase Manhattan Bank USA, N.A.*, 2 Misc. 3d 1003(A), 784 N.Y.S.2d 921 (Sup. Ct.), *aff'd*, 13 A.D.3d 322, 786 N.Y.S.2d 302 (2004); *see also Am. Express Bank, FSB v. Dechon*, 41 Misc. 3d 1226(A), 981 N.Y.S.2d 633 (Sup. Ct. 2013) (by accepting and using credit card, cardholder agreed to be bound to all of the terms and conditions set forth in the cardmember agreement); *Am. Express Centurion Bank v. Roel*, 36 Misc. 3d 1242(A), 960 N.Y.S.2d 48 (Sup. Ct. 2012) (once card holder utilized credit card, use constituted acceptance of offer of credit under terms of cardmember agreement).  Here, there is uncontested evidence that plaintiff received the Credit One card by mail in May 2012, used the card immediately upon receipt and regularly thereafter, and made payments to Credit One for that use (*see* Item 17-1, pp 15-56).  "In doing so, the plaintiff agreed to the terms of the Arbitration Agreement." *Anonymous v. JP Morgan Chase & Co.*, 2005 WL 2861589, at *4 (S.D.N.Y. Oct. 31, 2005).

   Additionally, the matters set forth in the sworn affidavits of Credit One corporate officers Gary Harwood (Vice President of Portfolio Services) and Vicki Scott (Vice President of Collections), and the documents attached thereto, provide compelling circumstantial evidence of Credit One's compliance with its customary policy to enclose a copy of the Cardholder Agreement within the same envelope used to mail the customer the credit card for activation.  *See, e.g., Kurz v. Chase Manhattan Bank USA, N.A.*, 319 F. Supp. 2d 457, 463 (S.D.N.Y. 2004) (actual receipt need not be proven; as "[p]roof of mailing may be accomplished by presenting circumstantial evidence, including evidence of customary mailing practices used in the sender's business.") (quoting *Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 917-18 (N.D.Tex. 2000) (crediting testimony of bank's

vice president for operations about company's mass mailing process and quality assurance controls). This evidence is also sufficient to establish that the written solicitation for a pre-approved credit card which Credit One sent to plaintiff contained clearly printed notice that acceptance of the offer would be subject to the terms and conditions contained in the Cardholder Agreement–including the arbitration clause. *See* Item 17-1, ¶¶ 7-8 & pp. 5-6.

Based on this record, the court finds that upon opening the Credit One account, using the Credit One card for purchases, and making payments to Credit One, plaintiff agreed to the terms of the Cardholder Agreement requiring that all disputes relating to the account be submitted to arbitration governed by, and enforceable under, the FAA. Accordingly, the first element of the four-part arbitrability inquiry is satisfied.

2.   **Scope of the Arbitration Clause**

As set forth above, the arbitration clause of Credit One's Cardholder Agreement is extremely broad, encompassing any dispute relating to the handling of the account, including any "communications relating to [the] account; any transactions or attempted transactions involving [the] account, whether authorized or not; billing, billing errors, credit reporting, the posting of transactions, payment or credits, or collections matters relating to [the] account …." Item 9-4, p. 5. The clause applies to all "Claims based on any theory of law, any contract, statute, regulation, ordinance, tort (including fraud or any intentional tort), common law, constitutional provision, respondeat superior, agency or other doctrine concerning liability for other persons, custom or course of dealing or any other legal or equitable ground (including any claim for injunctive or declaratory relief)." *Id.* at 5-6. The Agreement also expressly provides that "[a]ny questions about what Claims are subject to

arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced." *Id.* at 5.

Considering the breadth of this language, and in light of the federal policy requiring courts "to construe arbitration clauses as broadly as possible …," *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 128, the court cannot conclude with positive assurance that the arbitration provision of the Cardholder Agreement is not susceptible of an interpretation that covers the claims asserted in the amended complaint regarding Credit One's liability under the TCPA for its communications with plaintiff relating to her credit card account. Accordingly, the court finds that the second element of the arbitrability inquiry is satisfied provision of the Cardholder Agreement.

### 3.   Arbitrability of TCPA Claims

Because plaintiff asserts a federal statutory claim, the court must consider "whether Congress evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Green Tree Fin. Corp.Ala. v. Randolph*, 531 U.S. 79, 90 (2000). At this step of the inquiry, "the party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." *Id.* at 91-92; *see also Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987); *Spinelli v. Nat'l Football League*, 2015 WL 1433370, at *11 (S.D.N.Y. Mar. 27, 2015).

Plaintiff has made no showing in this regard. Moreover, as noted by defendant and as confirmed by this court's research, the few courts that have considered the issue have found nothing in the text or legislative history of the TCPA to suggest that Congress intended TCPA claims to be non-arbitrable. *See, e.g., Tuttle v. Sallie Mae, Inc.*, 2014 WL

545379, at *7 (N.D. Ind. Feb. 11, 2014); *Cyganiewicz v. Sallie Mae, Inc.*, 2013 WL 5797615, at *5–6 (D.Mass. Oct. 24, 2013).

Accordingly, the court finds that plaintiff has not met her burden of establishing a congressional intent to preclude waiver of judicial remedies for TCPA claims.

### 4. Stay Pending Arbitration

Having determined that plaintiff's TCPA claim is within the scope of and subject to the broad arbitration clause of the Cardholder Agreement, and because Credit One has requested a stay, section 3 of the FAA mandates that the court "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. As recently recognized by the Second Circuit, a mandatory stay "comports with the FAA's statutory scheme and pro-arbitration policy[,] enables parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation, and generally precludes judicial interference until there is a final award." *Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015).

Accordingly, the court finds that the claims set forth in the amended complaint in this action are subject to the arbitration clause in the applicable Cardholder Agreement, and the proceedings in this action must therefore be stayed pending the outcome of arbitration.

### **CONCLUSION**

For the foregoing reasons, defendant's motion (Item 9) to compel arbitration and stay proceedings in this action is granted. Pursuant to 9 U.S.C. §§ 3 and 4, the parties are

directed to proceed to arbitration in the manner provided for in the Cardholder Agreement, and all proceedings in this action are stayed until such time as the parties have advised the court, by consent motion to lift the stay or by other appropriate joint written submission, that the arbitration has been completed.

    So ordered.

                                            \s\ John T. Curtin
                                            JOHN T. CURTIN
                                            United States District Judge

Dated:   October 28, 2015
p:\pending\2015\15-516.arb.oct16.2015