UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KIMBERLY SALERNO,

Plaintiff,

Civil Action No. 1:15-cv-00516

v.

CREDIT ONE BANK, N.A.,

Defendant.

## MEMORANDUM IN SUPPORT OF CREDIT ONE BANK, N.A.'S MOTION TO VACATE ARBITRATION AWARD

### I.   INTRODUCTION

In arbitration proceedings compelled by the prior judge in this matter, Plaintiff

Kimberly Salerno ("Plaintiff") alleged that Credit One Bank ("Credit One" or "the

Bank") violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et*

*seq.*, by calling her cellular telephone with an automatic telephone dialing system

("ATDS") without the prior consent required for collections-based calls.   The parties'

agreement specified that any disputes between them would be arbitrated and would be

governed by the Federal Arbitration Act ("FAA") and pursuant to the specific terms of

the parties' contract.  *See* Exhibit 2 (Cardholder Agreement) at 5 ("Arbitration").   The

arbitration below was a two-step process, with an initial award from a single arbitrator

then taken to a three-arbitrator panel ("Panel"), which resulted in a final Award of

Arbitrators ("Award") on September 21, 2018.  *See* Exhibit 1 (Award).

Evidence at the hearing established that Plaintiff—herself a Credit One Platinum

1

Visa cardholder—received calls from that Bank to her '0301 cellular number not only
regarding monies that she owed on her account but also calls regarding monies owed by
her live-in boyfriend, ███████, on whose account Plaintiff's '0301 number had also
been provided (starting in October 2014) in regards to his own Credit One credit card.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

                                             See id.[1]   However, in
issuing this Award, the Panel manifestly disregarded controlling Second Circuit law.

When looking to arbitration proceedings subject to the FAA, the Second Circuit
has held that in addition to the specific grounds listed in the FAA for vacatur in 9 U.S.C.
§ 10, "the court may set aside an arbitration award if it was rendered in manifest
disregard of the law." *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451 (2d Cir.
2011) (internal quotation marks omitted). *See, e.g., New York Telephone Co. v.
Communication Workers of America*, 256 F.3d 89, 92-93 (2d Cir. 2001) (per curiam)
(vacating portion of award ordering payments found to be illegal and contrary to public
policy under Circuit precedent); *Fahnestock & Co., Inc. v. Waltman*, 935 F.2d 512, 519
(2d Cir. 1991) (vacating portion of arbitral award mandating punitive damages as
contrary to New York law prohibiting arbitrators from ordering punitive damages).

To secure vacatur of an arbitral award under the "manifest disregard" doctrine
requires the moving party to demonstrate "both that (1) the arbitrators knew of a

---

[1] Plaintiff had never asked for calls attempting to reach ███████ to stop; the day that she
finally did so (May 27, 2015), her request was immediately honored and she received no
further calls at her '0301 number. *See* <u>Exhibit 3</u> (Hr'g Tr.) at 59:2-20.

governing legal principle yet refused to apply it or ignored it altogether, and (2) the law

ignored by the arbitrators was well-defined, explicit, and clearly applicable to the case."

*Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (internal quotation marks omitted).

*See also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d

Cir. 2003) ("A party seeking vacatur bears the burden of proving that the arbitrators were

fully aware of the existence of a clearly defined governing legal principle, but refused to

apply it, in effect, ignoring it.").

　　　　Here, as detailed below, the Panel were made fully aware of governing legal

principles articulated by the Second Circuit—clear, explicit, and on-point TCPA

caselaw—and refused to apply that law or ignored it altogether.  Thus, the Award should

be vacated.

## II.　　THE TWO CONTROLLING SECOND CIRCUIT DECISIONS

　　　　First, as detailed in **Part III**, the Panel manifestly disregarded the Second Circuit's

determination that contractual consent to receive transactional calls from a business

cannot unilaterally be revoked by a customer such as Plaintiff.  *See Reyes v. Lincoln

Automotive Financial Servs.*, 861 F.3d 51, 53 (2d Cir. 2017) (finding that the TCPA does

not permit a consumer to revoke his or her consent to be called by a business when that

prior consent forms part of a bargained-for exchange).  Indeed, the Panel baldly stated

that Plaintiff did not consent to all calls placed on the Bank's behalf to her '0301 Number

(*see* Exhibit 1 at ¶ 11) without recognizing or addressing *Reyes* or the contractual prior

consent Plaintiff had given to the Bank to receive calls for any purpose to any number she

provided to the Bank.  As the Bank explained to the Panel (*see* Exhibits 4, 7, and 8

3

(Bank's briefing)), *Reyes* requires the Panel to recognize that Cardholder Agreement's provision that the Bank could call her at any number she provided the Bank meant that it retained Plaintiff's consent to call her at any number she provided, even for calls placed by autodialers. The Panel was made aware of *Reyes*, and yet, the Panel ignored *Reyes* entirely even though that case was clearly and explicitly applicable to the parties' dispute.

Second, as discussed in **Part IV**, the Panel also manifestly disregarded Second Circuit law when it found that calls were placed to Plaintiff were placed with an Automatic Telephone Dialing System ("ATDS"). When the **only** evidence before the Panel on the question of ATDS was the Bank's own testimony that it was unsure of any details of the vendors' dialing systems other than to know the systems had predictive dialing elements (*see* Exhibit 1 at ¶ 8), the Panel cited to but then manifestly disregarded the holding of a recent Second Circuit decision that established what type of telephone dialing equipment would be an ATDS subject to the TCPA's restrictions. *See King v. Time Warner Cable Inc.*, 894 F.3d 473, 481 (2d Cir. 2018) (only equipment that could presently perform the defined ATDS functions (i.e., generating random/sequential numbers and dialing them) would be encompassed within the TCPA's restrictions). The *King* decision issued on June 29, 2018, two days after the hearing before the Panel took place; in post-hearing briefing, the Bank then provided this decision to the Panel in its post-arbitration briefing and detailed its direct applicability to the questions before the Panel on the ATDS prong of Plaintiff's claim. *See, generally,* Exhibits 7 and 8. Recognizing the existence of *King* as the Panel did (*see* Exhibit 1, ¶ 9), but then failing entirely to apply its holding even though Second Circuit law controls TCPA disputes in

4

New York, constitutes manifest disregard of the law. *See Duferco*, 333 F.3d at 389.

Given the clear Second Circuit law that the arbitrators were alerted to and yet manifestly disregarded, Plaintiff was not entitled to recover any of the statutory damages she sought under the TCPA. Moreover, the Award should be and can be vacated should **either** of these two Second Circuit decisions have been disregarded by the Panel, and the Court need only find manifest disregard of one of the decisions in order to vacate the Award.

## III.    THE PANEL MANIFESTLY DISREGARDED THE CONTROLLING *REYES* DECISION.

### A.    Requirements For A Lack-of-Consent Claim Under The TCPA.

Congress enacted the TCPA to protect consumers from the "nuisance, invasion of privacy, cost and inconvenience" of unsolicited telemarketing calls. *Stoops v. Wells Fargo Bank, N.A.*, 2016 WL 3566266, at *9 (W.D. Pa. June 24, 2016) (citing *In re Rules Implementing the Tel. Consumer Prof. Act of 1991*, 30 FCC Red. 7961, 7979-80 (F.C.C. July10, 2015); see also *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 55 (2d Cir. 2017), as amended (Aug. 21, 2017) ("Congress enacted the TCPA to protect consumers against "[u]nrestricted telemarketing"). There are three elements to a TCPA claim: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Van Patten v. Vertical Fitness Grp., LLC*, 22 F.Supp.3d 1069, 1073 (S.D. Cal. 2014). It is Plaintiff's burden to show these elements. *See, e.g., Breslow v. Wells Fargo Bank, N.A.*, 857 F.Supp.2d 1316, 1319 (S.D. Fla. 2012) (confirming plaintiff bears the burden of proof).

Lack of prior consent is thus an essential element of a TCPA claim. *See* 47 U.S.C. § 227(a). While "prior express **written** consent" involving written signatures is the standard of prior consent required for **telemarketing** calls placed with an ATDS, transactional calls such as those at issue here only require prior express consent, which exists when a customer provides a business with his or her number. *See Zani v. Rite Aid Headquarters Corp.,* 246 F. Supp. 3d 835, 857 (S.D.N.Y. 2017), aff'd 725 F. App'x 41 (2d Cir. 2018) ("an automated, prerecorded call to a cellular phone that does not contain telemarketing or advertisements is not subject to the prior express **written** consent requirement, but only to the prior express consent requirement") (emphasis added); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 (1992) ("[p]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.").

### B.     Facts Established At The Hearing

Here, as the Bank established, long before she received any calls from the Bank, Plaintiff first agreed to be bound by the terms on the Solicitation Offer by agreeing in her application to receive calls at any numbers she provided the Bank at any time: "I authorize Credit One Bank or its agents to contact me **at any phone number I provide at any time** (including cellular/wireless telephone services), via a live operator, auto-dialer or prerecorded message." *See* Exhibit 3 (Hr'g Tr. at 145:16-148:13) & Exhibit 5 (Hr'g Ex. D at COB-0003). The Bank's witness testified to the Panel that no online application for a line of credit could have been completed absent Plaintiff filling out the

6

identical online application containing this prior consent disclosure and clicking to accept these terms of the Bank's offer.  *See* Exhibit 3 (Hr'g Tr.) at 101:3-19, 109:16-111:8, and 145:16-148:13.

Then, after her application was accepted, Ms. Salerno agreed to the terms of the Customer Agreement when activating her card.  *See* Exhibit 2 (Cardholder Agreement), at COB-0007 (first paragraph).  The Agreement establishes, in Section 19 (the **COMMUNICATIONS** section) that the Bank had Plaintiff's express permission to call her **"at any number"** that she provides **"at any time"** and **"for any lawful purpose"**, even if calls were to be placed via automated telephone dialing systems.  *See id.* at COB-00011, § 19.  Importantly, the Agreement's "Communications" section also established if Plaintiff contacted the Bank from her cellular phone, that act would be "providing" the number to the Bank as defined by the Contract.  *See id.* ("Phone numbers and email addresses you **provide** include those you give to us, **those from which you contact us** . . . ")(emphasis added).

Thus, under the clear terms of the Cardholder Agreement, the Bank had Plaintiff's prior consent for any calls it placed to her for purposes such as collections efforts.  *See, e.g., Saunders v. NCO Fin. Sys., Inc.*, 910 F.Supp.2d 464, 467 (E.D.N.Y. Dec.19, 2012) ("authorities are almost unanimous that voluntarily furnishing a cellphone number to a vendor or other contractual counterparty constitutes express consent").  Moreover, the evidence at the hearing was clear that a customer's agreement to receive calls (and not to put the Bank at risk for facing TCPA allegations) is essential to the Bank, and that Plaintiff agreed through the Customer Agreement that she consented to any calls placed

7

by the Bank to the phone numbers she provided to Credit One. *See* <u>Exhibit 3</u>, Hr'g Tr. at 142:16-143:11; 153:8-154:.[2]



*see also id.* at 159:6-9 ("Q. So the bank multiple times then was called in from the 0301 number with social security number and full

---

[2] Indeed, *Reyes* addressed and rejected the argument that the communications contact provision there was not an essential bargained for term. As noted by *Reyes*, "[i]n contract law, 'essential terms' are those terms that are necessary in order to lend an agreement sufficient detail to be enforceable by a court." *Reyes*, 2017 WL 2675363 at *5. The court further opined that "It is a fundamental rule of contracts that parties may bind themselves to any terms, so long as the basic conditions of contract formation (*e.g.*, consideration and mutual assent) are met." *Id. See also Anthony v. GE Capital Retail Bank*, 14-CV-2809, at 5-8 (S.D.N.Y. August 16, 2017) (noting that the plaintiff had accepted the terms of his credit card agreement, including a consent to communications clause, by making purchases on his credit card).

credit card account number for ▮▮▮▮▮ "A. Yes.").

The testimony at the hearing from ▮▮▮▮▮ and from Plaintiff herself made clear that it was Plaintiff herself who called in from the '0301 Number in regards to the ▮▮ account, providing the Bank that '0301 number for that account.  First, ▮▮▮▮ **Plaintiff's own witness**, denied vehemently that he ever called into the Bank from the '0301 Number:



▮▮▮▮▮▮▮▮▮▮ Second, Plaintiff conceded she was the **only user** of the '0301 phone. *See id.* at 46: 10-15 ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ ); *see also id.* at 63:9-19.

Given that there is no question that the '0301 number was provided to the Bank in relation to ▮▮▮▮ account, and that only Plaintiff used her cellular phone to call into Credit One, there is also no question that the Bank had Plaintiffs' consent to call her '0301 number in regards to both accounts for which she provided the number.  *See*

9

Exhibit 2, § 19, Communications.

### C.    Application of *Reyes* To The Evidence Requires Vacatur.

The Second Circuit in *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 58 (2d Cir. 2017) found that a consumer who consented to being contacted by an automatic dialer could not revoke her consent because "[a] party who has agreed to a particular term in a valid contract cannot later renege on that term or unilaterally declare it to no longer apply." *See also id.* at 59 ("We are not free to substitute our own policy preferences for those of the legislature by reading a right to revoke contractual consent into the TCPA where Congress has provided none."). As the Second Circuit explained, "Reyes's consent to be contacted by telephone, however, was not provided gratuitously; it was included as an express provision of a contract to lease an automobile from Lincoln. Under such circumstances, "consent," as that term is used in the TCPA, is not revocable." *Id.* at 57.

Here, as explained to the Panel, *Reyes* establishes that through accepting the Cardholder Agreement, Plaintiff agreed that the Bank could call her at any time at any number she provided, and accepted that contacting the Bank from her '0301 number was "providing" the number to Credit One. *See* Exhibit 2, § 19, Communications. Like the customer in *Reyes*, Plaintiff expressly agreed to being contacted on her cellular phone, at the subject telephone number, in connection with debt collection and other lawful purposes once she provided her '0301 number to the Bank, as outlined above. *See also Reyes*, 861 F.3d at 57-59.

Accordingly, Plaintiff's TCPA claim must fail under *Reyes*, as she provided the '0301 Number to the Bank, tied it to her boyfriend's account, and received calls placed in

a lawful attempt to contact the provided '0301 telephone number.  Second Circuit law provided to the Panel (and ignored by the Panel) makes clear that Plaintiff could not alter her agreement that calls to her '0301 number for any lawful purpose—specifically calls made as a part of collections efforts—were permissible by contract to any number she used to contact the Bank.

Reyes is the highest and only federal appellate decision on the issue of express contractual consent, and controls in the Second Circuit, and was presented to the Panel and ignored by the Panel.  Reyes should have specifically controlled the Panel's analysis rather than being manifestly disregarded by those arbitrators.  Under Reyes, when it is undisputed that in order to open her unsecured line of credit, Plaintiff consented to receiving ATDS calls from the Bank for any purpose, to any number she provided by using that number to contact the Bank, her TCPA claims lack merit regardless of whether or not an ATDS was employed in the calls at issue.

Thus, the Court can and should vacate the Award on the basis of Reyes alone.

## IV.   THE PANEL MANIFESTLY DISREGARDED THE CONTROLLING *KING* DECISION.

### A.   Requirements For Use-of-ATDS Claims Under The TCPA.

The TCPA was not drafted to apply to all calls; instead, it was drafted in 1991 to restrict certain types of dialing equipment that were being heavily used in telemarketing scams—equipment that randomly and sequentially dialed numbers.  Thus, it is not "autodialers" generally that are subject to the TCPA, but "automatic telephone dialing systems" specifically.  *See* 47 U.S.C. § 227(a)(1).  Importantly, the TCPA defines

11

"automatic telephone dialing system" or "ATDS":  the statute is clear that the equipment for which it has restrictions in regards to calls to cell phones is "equipment with the capacity (A) to store or produce telephone numbers to be called, **using a random or sequential number generator**; and (B) to dial such numbers."  47 U.S.C. § 227(b)(1)(A) (definition of ATDS; emphasis added).    Notably, "[t]he statute never mentions a capacity to dial from a set list" of numbers.  *Gary v. TrueBlue, Inc.*, 2018 WL 3647046, *7 (E.D. Mich. Aug. 1, 2018).  Again, it is Plaintiff "who must show, as an element of [her] claim, that [Respondent] used an ATDS."  *Buslepp v. B&B Entertainment, LLC*, 2012 WL 4761509, *4 (S.D. Fla. Oct. 5, 2012).

Until recently, an unreasonably expansive interpretation of the definition of an ATDS held sway.  In 2003 and 2008, the FCC issued rulings expanding the statutory definition of an ATDS to include certain predictive dialers due to "the capacity to dial numbers without human intervention."  *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14093 (2003); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 566 (2008).  In 2015, the FCC issued a Declaratory Ruling that reaffirmed the prior rules and then went even further, noting that whether a system has the capacity to operate as an ATDS is not limited to a system's "present use," but may include a system's "potential functionalities." *See In the Matter of Rules and Regulations Implementing the Tel. Consumer. Prot. Act of 1991*, 30 F.C.C.R. 7961, 7974 (2015).

But then on March 16, 2018, the U.S. Court of Appeals for the District of

Columbia Circuit found the FCC's definition of an ATDS constituted an "unreasonably expansive interpretation of the statute." *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 703 (D.C. Cir. 2018) ("*ACA Int'l*"). The D.C. Circuit found the FCC had exceeded its authority when it found an ATDS encompasses any system with the "potential functionality" of an ATDS. *Id*. The statute clearly requires that a system have a present capacity to generate random/sequential numbers. Thus, after noting various inconsistencies in the FCC's treatment of the definition of an "ATDS," the D.C. Circuit Court "set aside the Commission's treatment of those matters" (*ACA Int'l*, 885 F.3d at 703), and also specifically noted that "**at least some predictive dialers, as explained, have no capacity to generate random or sequential numbers**," and, therefore, do not fall under the statute's definition of ATDS. *Id.*

A few months after the *ACA Int'l* Order issued, the Second Circuit weighed in and issued its own decision addressing the scope and meaning of "ATDS" systems under the TCPA. It is Plaintiff's burden to show the calls were placed with an ATDS as defined by the statute (*see, e.g., Breslow,* 857 F.Supp.2d at 1319), in accordance with the law of this circuit.

### B.    Fact Established At The Hearing As To ATDS

At the evidentiary hearing, Plaintiff did not provide any evidence regarding the specific calling systems used by the third-party Bank vendors that placed calls to her '0301 Number. Instead,

13

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████

The Bank witness explained his general awareness that a live representative first indicates his or her readiness to take the next call before the system would then dial numbers to locate a customer able to speak with that representative.   ███████████

███████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████   Thus, Mr. Harwood was very clear that he lacked specific knowledge about the dialing systems that were used by the vendors that called Plaintiff, other than to know that there was some element of predictive dialing in play. *See* Hr'g Tr. at 178:24-179:17.

Importantly, at the hearing, Mr. Harwood verified **the Bank's understanding that no vendor employs a system that would have the ability to randomly or sequentially generate, store, or dial numbers**. *See* Hr'g Tr. at 179:18-180:9. Indeed, he explained that such a system would make no sense for collections vendors to use, as collections calls depend on reaching a customer at a valid number provided by that

14

customer.



*Id.* (emphasis added).  Thus, the **only** evidence at the hearing offered by either party on the question of whether the dialing systems employed could randomly/sequentially generate and dial numbers was Mr. Harwood's testimony that the Bank was aware of no such capabilities.  *See id.*

### C.    Application of *King* to the Facts Requires Vacatur.

Here, Plaintiff put **no evidence** before the Panel regarding the actual usage or configuration of the dialing systems by the three vendors who called the '0301 number in the attempts to contact the Credit One cardholder providing that number.  The Bank's witness, Mr. Harwood, could not (and did not) speak to whether systems in use by vendors have the ability to store, produce, and/or dial numbers via random/sequential number generators, other than to note that the Bank's understanding is that there is no such functionality.  *See* Hr'g Tr. at 179:18-180:9.  Instead, Plaintiff only showed through Mr. Harwood's testimony that the vendors' dialing systems had elements of predictive

dialing (which is the extent of Mr. Harwood's knowledge).[3]  Because she did not provide

any information about the specific calling systems used by the three vendors who called

her, Plaintiff's arguments (which worked for Plaintiff in the first arbitration, before *ACA*

*International*) rely on old FCC orders opining that any predictive dialer is an ATDS. *See,*

*e.g.,* Hr'g Tr. at 210:12-13 (Plaintiff's counsel articulating her position:  "Under the 2003

and 2008 FCC orders, which it's our position remain the law after the ACA decision,

that's [a predictive dialer] clearly an ATDS.").

  However, the Second Circuit has made clear its own determination that the old

FCC orders no longer control.  In *King v. Time Warner Cable Inc.,* 894 F.3d 473, 481 (2d

Cir. 2018), the Second Circuit found that the district court's reliance on FCC earlier

guidance as to "ATDS" systems was misplaced, and that the text of the TCPA itself

controls what equipment is subject to that statute's restrictions so that only equipment

that could <u>presently</u> perform the defined ATDS functions (i.e., generating

random/sequential numbers and dialing them) would be encompassed within the TCPA's

restrictions. *See id.* at 482.  As the court explained, the FCC's "administrative

interpretation of the statute [] has now been invalidated" and that "without an

administrative interpretation to defer to, the best interpretation of the statutory language

is the one suggested by the D.C. Circuit's discussion in *ACA International*:  in the

TCPA's definition of an autodialer, a device's 'capacity' refers to its current functions

---

[3] After *ACA International*'s clarification of "ATDS" in March 2018, Plaintiff did not ask
for a stay in this proceeding in order to develop further evidence on the calling systems;
moreover, when the Bank offered to postpone the June 26, 2018 hearing if Plaintiff
wished to seek evidence from the vendors regarding their systems, Plaintiff rejected that
offer and determined that she would move ahead with the hearing.

absent additional modifications, regardless of whether those functions were in use during the offending call."). *Id.*

The Second Circuit recognized in its order that the day before it issued its own decision, the Third Circuit had reached the same decision on what would constitute an ATDS. *See id.* at 479 n.5 (noting that the Third Circuit's *Dominguez* case, issued the day before the Second Circuit's own ATDS order, echoed the same reasoning that a plaintiff's TCPA claim cannot survive unless that plaintiff can "demonstrate that the defendant's equipment 'had the present capacity to function as an autodialer'") (citing *Dominguez v. Yahoo, Inc.,* 894 F.3d 116, 121 (3d Cir. 2018). In *Dominguez,* the Third Circuit threw out various expert reports because they had nothing to do with "the key factual question actually at issue in this case—whether the Email SMS System **functioned as an autodialer by randomly or sequentially generating telephone numbers, and dialing those numbers.**" *Dominguez*, 894 F.3d at 121 *id.* at 121 (emphasis added). The *Dominguez* court found that various expert witnesses offered by Plaintiffs and opining based on old FCC interpretations of ATDS had failed to provide evidence that an ATDS was used, and noted that "those messages were sent precisely because the prior owner of Dominguez's telephone number had affirmatively opted to receive them, **not because of random number generation**. The TCPA's prohibition on autodialers is therefore not the proper means of redress." *Id.* (emphasis added).

In a decision that follows *King* (and *Dominguez*), a district court in Michigan found that given the directive in that case to follow the statutory language of the TCPA in determining whether an ATDS was employed in the debt collection calls at issue there,

17

the plaintiff had not met his burden of proof on use of an ATDS. *See Keyes v. Ocwen Loan Servicing, LLC,* 335 F. Supp. 3d 951 (E.D. Mich. 2018), appeal dismissed, No. 18-1989, 2018 WL 6242281 (6th Cir. Oct. 24, 2018) ("devices must be able to generate random or sequential numbers to be dialed to qualify as an ATDS. This approach tracks the statutory language."). And a recent Pennsylvania court bound by the Third Circuit's *Dominguez* decision has also explained, "Because this Court is bound to follow the holding of *Dominguez* . . ., the Court concludes that a predictive dialing device that merely dials numbers from a stored list of numbers—rather than having generated those numbers either randomly or sequentially—is not an ATDS." *Richardson, et. al. v. Verde Energy USA, Inc.*, No. CV 15-6325, 2018 WL 6622996, at *7–8 (E.D. Pa. Dec. 17, 2018) (granting defendant summary judgement on claims involving alleged use of an ATDS, as allegations of use of predictive dialing systems did not meet plaintiffs' burden of proof on ATDS).[4]

Even more directly on point, recently a district court within the Eighth Circuit found *King* persuasive in a TCPA case where Credit One was the defendant; that court followed the *King* decision's reasoning in assessing the question of whether an ATDS was used in calls placed by the Bank's vendors, and found that evidence of predictive elements in a dialing system was not sufficient to show use of an ATDS, as defined by the TCPA. *See Roark v. Credit One Bank, N.A.,* No. CV 16-173 (PAM/ECW), 2018 WL

---

[4] *See also Pinkus v. Sirius XM Radio, Inc.,* 2018 WL 3586186, at *6 (N.D. Ill. July 26, 2018) ("*ACA International* necessarily invalidated the 2003 Order and 2008 Declaratory Ruling insofar as they provide, as did the 2015 Declaratory Ruling, that a predictive dialer qualifies as an ATDS even if it does not have the capacity to generate phone numbers randomly or sequentially and then to dial them.").

5921652, at *3 (D. Minn. Nov. 13, 2018) (refusing to follow new Ninth Circuit guidance

on ATDS, and instead declaring that "[t]his Court, however, finds the decisions of the

D.C., Second, and Third Circuits more persuasive.").  In considering the question of

whether Credit One vendors had used ATDS systems to call the plaintiff there, the *Roark*

court noted that while predictive systems such as those Mr. Harwood described to the

Panel here were clearly in use, that such systems are not necessarily also capable of

**generating <u>and</u> dialing** random/sequential numbers, as the statutory definition of ATDS

requires:

> Here, there is no question that the devices used by Credit One's
> agents are predictive dialing systems. However, in the wake of *ACA Int'l*,
> **predictive dialing systems are no longer always considered autodialers**
> **under the TCPA. Rather, the correct inquiry is whether a device can**
> **generate numbers to dial either randomly or sequentially.** Credit One's
> "limited understanding of the proprietary dialing systems employed by the
> vendors is that none of those systems has the actual capability of
> randomly/sequentially generating numbers to dial" (Meek Decl. (Docket
> No. 88) at 6 ¶ 31), and "the vendors have worked diligently to ensure that
> their dialing systems do not have such capabilities ...." (Id. at ¶ 32.)
>
> Roark has provided little evidence regarding the specifics of Credit
> One's dialing systems and has not argued that the systems have either the
> present or future ability to generate numbers to call. Roark instead urges
> this Court to follow the Ninth Circuit decision mentioned above. **This**
> **Court, however, finds the decisions of the D.C., Second, and Third**
> **Circuits more persuasive.**
>
> In sum, Roark has failed to show that there is a genuine issue of
> material fact regarding the required functionality of Credit One's dialing
> system. Credit One asserts that the systems it uses do not have the present
> capability to generate random or sequential numbers to dial, and Roark has
> offered nothing to rebut that claim.

Roark, 2018 WL 5921652, at *3 (granting summary judgment) (emphasis added).[5]

Here, too, there was **no evidence** before the Panel (and the Panel cites to no such evidence in its Award) establishing that the vendors' dialing systems are ATDS systems as defined by the TCPA—systems with random/sequential number generation capabilities (*see* 47 U.S.C. §227(a)(1)).  Following the instructions in *King*—to apply the TCPA's statutory definition of ATDS—should have led the Panel to rule in favor of the Bank.  The Panel could only have found otherwise by manifestly disregarding the clear holding of *King.*

## V.   **CONCLUSION**

Credit One is well aware that the Second Circuit has recognized "an extremely deferential standard of review" is appropriate in the context of arbitral awards in order "[t]o encourage and support the use of arbitration by consenting parties." *Porzig v. Dresdner, Kleinwort, Benson, North Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007); *see also Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) ("[A]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." (internal quotation marks omitted) ).  However, the Second Circuit (as discussed above) does require vacatur when arbitrators manifestly disregard the law—because what party to a contract would agree to arbitration proceedings conducted in disregard of clear, controlling, and on-point law?  Thus, in the Second Circuit, "a court may vacate an award if it exhibits a 'manifest disregard of the

---

[5] On December 12, 2018, the plaintiff in the *Roark* action filed a notice of appeal.

law.'" *Porzig*m, 497 F.3d at 139 (citations omitted).

Here, where it is clear that the Panel was made aware of the *Reyes* and *King* decisions that control in the Second Circuit, and where there is no question that those decisions are directly on point here and should have controlled the Panel's analysis, and where the Panel ignored (*Reyes*) or manifestly misapplied (*King*) the controlling law, the Award should be vacated.

Date:  December 21, 2018        Respectfully submitted,

/s/Aaron R. Easley

Aaron R. Easley (ae9922)
Sessions, Fishman, Nathan & Israel, LLC
3 Cross Creek Drive
Flemington, NJ 08822-4938
Telephone:  (908) 237-1660
Email:  aeasley@sessions.legal

Attorneys for Credit One Bank, N.A.

4838-9685-1843